USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-24-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RICHARD SCHONINGER, JACQUELINE :
SCHONINGER, SCOTT SCHONINGER, and :
GERALD ALLEN, :
                        *Plaintiffs*, :
      - against - :
JAMES GREEN and WILLIAM WILKINSON, :
                        *Defendants.* :
-----------------------------------------------------------------x

15 Civ. 2233 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Richard Schoninger, Jacqueline Schoninger, Scott Schoninger, and Gerald Allen filed suit against defendants James Green and Dr. William Wilkinson, claiming breach of contract, fraud, and unjust enrichment arising out of the alleged breach of an oral agreement between Richard Schoninger and defendants. Defendants now move to dismiss plaintiffs' second amended complaint (SAC). The motion is granted in part and denied in part.

**I.    Facts and Procedural History**

The SAC alleges the following facts, which the Court accepts as true for the purpose of deciding defendants' motion to dismiss.

Defendants Green and Wilkinson are the sole owners of Brighthaven Ventures, LLC (Brighthaven), a biotechnology company that is developing the SGLT 2 inhibitor remogliflozin etzbonate (Remo) for treatment type-2 diabetes and nonalcoholic steatohepatitis. SAC ¶ 12. In September 2013, Islet Sciences, Inc. (Islet), a public biotechnology company, approached Green and Wilkinson through its investment banker, Cova Capital, and proposed that they join Islet's management team so that Islet and Brighthaven could jointly develop Remo. *Id.* at ¶¶ 9–10, 14. After negotiations, Islet's board appointed Green as CEO and Wilkinson as COO of Islet, at

1

which point the parties began negotiating the terms of a license of Remo from Brighthaven to Islet. *Id.* at ¶ 14. Green and Wilkinson were on both sides of the transaction, as officers of Islet and owners of Brighthaven. *Id.*

On January 25, 2014, Cova Capital advised Islet's board of directors that the license structure could create conflicts of interests between Islet and Brighthaven and suggested Islet acquire Brighthaven instead. *Id.* at ¶ 15. Islet's board, Cova Capital, Green, and Wilkinson discussed the structure of such an acquisition, such as an upfront minority share grant plus additional milestone payments related to Remo's development. *Id.* At this meeting, Islet indicated its desire to maintain flexibility to pay Brighthaven's owners (Green and Wilkinson) in stock or cash. *Id.* Two weeks later, on February 9, 2014, the parties agreed to the key terms of the merger, which included Islet's acquisition of all the membership interests in Brighthaven in exchange for Islet issuing 30 million shares of Islet common stock to Green and Wilkinson and the potential for up to $71 million of additional purchase-price payments based on meeting certain development milestones. *Id.* at ¶ 16.

Two days later, on February 11, 2014, Green, Wilkinson, and Edward Gibstein of Cova Capital met with Richard Schoninger, an accredited investor, to discuss an investment in Islet, which was in desperate need of cash to support its development of Remo. *Id.* at ¶ 17. At the meeting, Green and Wilkinson stated that the terms of the merger had been negotiated, described the milestone payments, and told Schoninger that those payments could be made in cash or by issuing Islet stock to Green and Wilkinson at Islet's option. *Id.* at ¶ 18. Schoninger agreed to invest $1 million in Islet in exchange for Green's and Wilkinson's agreement to sell Brighthaven to Islet on the terms discussed. *Id.* at ¶ 20. Schoninger later discussed the proposed merger with his fellow investor, Gerald Allen, and told him that he could join the agreement as an investor. *Id.* ¶ 21.

2

On March 7, 2014, Islet's board approved a letter of intent to merge with Brighthaven, but on terms significantly different from those Green and Wilkinson discussed with Schoninger on February 11, 2014. *Id.* at ¶ 22. Most importantly, the new terms eliminated the option to make the milestone payments in cash and calculated the number of shares to be issued based on the average closing price for the 30 days preceding the milestone, in effect paying out undervalued stock. *Id.* at ¶ 24. These new terms were not publicly disclosed, however, until March 12, 2014, two days after Schoninger and Allen signed their subscription agreements finalizing their investments.[1] *Id.* On September 30, 2014, Islet and Brighthaven entered into a merger agreement on the new terms, but the merger was later terminated, and Islet and Brighthaven instead entered into a licensing agreement. *Id.* at ¶¶ 25–27.

On March 24, 2015, plaintiffs filed a complaint alleging that on February 11, 2014, Schoninger and Gibstein, on behalf of Cova Capital, entered into an oral agreement whereby Green and Wilkinson agreed to merge Islet and Brighthaven in exchange for Schoninger's investment of $1 million in Islet.[2] They claim breach of contract, fraud, and unjust enrichment. On June 8, 2015, plaintiffs filed an amended complaint adding allegations pertaining to the amount of the investment allegedly agreed to. And on June 16, 2015, plaintiffs filed their second amended complaint removing Cova as a named party.

## II. Legal Standard

Rule 12(b)(6) mandates that the Court accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*,

---

[1] The subscription agreements include an integration clause and a modification clause, which provide that the agreement cannot be "modified, amended, supplemented, canceled or discharged, except by written instrument." Green Decl., Exh. A, Subscription Agreement ¶ i.

[2] Plaintiffs Jacqueline and Scott Schoninger are Richard Schoninger's children, to whom Richard Schoninger transferred several thousand shares of Islet stock.

3

551 U.S. 89, 94 (2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the Court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard and must be dismissed. *Id.* at 678.

On a motion to dismiss, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). The Court may also consider other documents, of which the plaintiff has notice, that are "integral" to the claims at issue—that is, "where the complaint relies heavily upon [their] terms and effect." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citations and internal quotation marks omitted).

### III. Analysis

#### a. Breach-of-Contract Claim

To state a claim for breach of contract under New York law, plaintiffs must plead "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). Plaintiffs allege that they entered into an oral agreement whereby Green and Wilkinson agreed to merge Islet and Brighthaven under certain terms in exchange for Schoninger's investment of $1 million in Islet. They further allege that Schoninger performed his obligations under the contract by making the investment, and that Green and Wilkinson breached the contract by failing to merge Islet and Brighthaven. They seek compensatory and punitive damages.

Defendants argue that any oral agreement between Schoninger and defendants was superseded by the subscription agreements signed by Schoninger and Allen. As a preliminary matter, these subscription agreements, while mentioned in the SAC, are neither incorporated by, nor integral to, the SAC, so they are not properly before the Court. *See DiFolco*, 622 F.3d at 111. But even if the Court were to consider the terms of the agreements, defendants' argument would fail. The subscription agreements are between plaintiffs and Islet; they cannot supersede a separate agreement between plaintiffs and defendants.

Defendants also present voicemails allegedly left by Schoninger, which, according to defendants, show that Schoninger had not decided the amount he was going to invest until March 10, 2014—*after* the parties purportedly agreed to the $1 million purchase commitment as alleged in the SAC. *See* Green Decl., Exhs. F, G, H. These voicemails may be evidence that the parties did not agree to a material term of the alleged contract and thus never came to a meeting of the minds. But these voicemails are in no way incorporated by or integral to the SAC, and the Court cannot consider them at this point. *See DiFolco*, 622 F.3d at 111. Such evidence may be considered on a motion for summary judgment.

Defendants' version of the facts differs substantially from the allegations of the SAC: plaintiffs are simply dissatisfied with their investment in Islet because they expected Islet to merge with Brighthaven; and since their subscription agreement with Islet forecloses any claims against the company, plaintiffs have concocted the oral agreement between Schoninger and defendants. The evidence, including the evidence defendants attempted to introduce on their motion to dismiss, may support that story. But even if it does, it presents factual issues that the Court cannot resolve on a motion to dismiss.

### b. Fraud and Unjust-Enrichment Claims

Plaintiffs' fraud claim arises out of the same facts as plaintiffs' breach of contract claim with the additional allegation that defendants never intended to perform the contract. SAC ¶ 36. It is thus redundant to plaintiffs' breach-of-contract claim and barred under New York law. *See First Bank of Americas v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 20–21 (N.Y. App. Div. 1st Dep't 1999).

Plaintiffs unjust-enrichment claim alleges that defendants "misappropriated plaintiffs funds and spent a substantial portion of them exclusively on themselves and [Brighthaven] to develop Remo for [Brighthaven] alone." SAC ¶ 41. These allegations sound in fraud, not unjust enrichment. And the SAC includes no factual allegations whatsoever in support of the claim, rendering it insufficient under *Iqbal*, let alone under the heightened pleading standard of Fed. R. Civ. P. 9(b).

### IV. Conclusion

The motion to dismiss is GRANTED in part as to plaintiffs' fraud and unjust-enrichment claims and DENIED in part as to plaintiffs' breach-of-contract claim. The Clerk of Court is directed to terminate the motion at Docket No. 19. The parties are directed to submit a civil-case-management plan by March 14, 2016.

Dated: New York, New York  
       February 24, 2016

SO ORDERED

*Paul Crotty*  
PAUL A. CROTTY  
United States District Judge