USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/5/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD SCHONINGER, JACQUELINE
SCHONINGER, SCOTT SCHONINGER, and
GERALD ALLEN,

        *Plaintiffs*,

- against -

JAMES GREEN and WILLIAM WILKISON,

        *Defendants*.
------------------------------------------------------------x

15 Civ. 2233 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Richard Schoninger, Jacqueline Schoninger, Scott Schoninger, and Gerald Allen (collectively "Plaintiffs"), investors in Islet Sciences, Inc. ("Islet"), a public company, sued defendants Green and Wilkison (collectively "Defendants"), officers of Islet, in their individual capacity, claiming breach of contract, fraud, and unjust enrichment arising out of an alleged oral agreement between Richard Schoninger ("Schoninger") and Defendants. The fraud and unjust enrichment claims have been previously dismissed. *Schoninger v. Green*, 2016 WL 817474 (S.D.N.Y. Feb. 24, 2016).

Defendants now move for summary judgment against Plaintiffs on the remaining breach of contract claim, contending that Schoninger and Defendants never entered into any oral agreement.[1] The Defendant's motion is **GRANTED**.

## FACTS

Green and Wilkison were the sole members of Brighthaven Ventures, L.L.C. ("BHV"), a private biotechnology company pursuing development of the SGLT 2 inhibitor remoglifozin

---

[1] The other plaintiffs' breach of contract claim is also contingent on the existence of an oral agreement between Schoninger and Defendants.

1

etabonate ("Remo") for type 2 diabetes. ECF 61 ("Def. 56.1 Stmt."), ¶ 1. In September 2013, Islet solicited Green and Wilkison to join Islet and suggested that BHV and Islet explore an arrangement to jointly develop Remo. *Id.*, at ¶¶ 3, 8; ECF 60-3 (Margulies Decl., Ex. C ("Avogenx S-4")), at 19. In October 2013, Green was appointed as the Chief Executive Officer and a Director of Islet; and Wilkison was appointed as the Chief Operating Officer of Islet. Def. 56.1 Stmt., ¶¶ 9–11. From October 2013 to December 2013, Islet and BHV negotiated terms of a potential license of Remo from BHV to Islet. Avogenx S-4, at 20.

### *Initial Merger Negotiation between Islet and BHV*

On January 25, 2014, Islet's investment banker advised independent members of the Islet Board of Directors ("Islet Board") that a license from BHV was less favorable than an acquisition of BHV. Avogenx S-4, at 20. At Islet's request, BHV agreed to explore such an acquisition. *Id.*; ECF 12 (Second Amended Complaint ("SAC")), ¶15. Islet and BHV also agreed that non-cash payments made to the BHV members would be structured as a tax-free exchange. Avogenx S-4, at 20.

On February 9, 2014, Islet and BHV agreed to the following "general terms for the proposed [acquisition] transaction": Islet would acquire 100% of the issued and outstanding membership interests in BHV, in exchange for Islet issuing 30 million shares of Islet common stock and the potential for up to $71 million of additional payment based on the achievement of certain milestones. Def. 56.1 Stmt., ¶15.

### *Schoninger's February 11, 2014 Due Diligence Meeting*

On February 11, 2014, Green and Wilkison met with Islet's investment banker—Edward Gibstein ("Gibstein") of Cova Capital L.L.C.—and Schoninger. SAC, ¶17. The purpose of this meeting was for Schoninger to consider his potential investment in Islet and "in an offering that Islet Sciences was making." ECF 60-7 (Margulies Decl. Ex. G ("Schoninger Tr.")), at 80:8–12;

2

ECF 60-2 (Margulies Decl. Ex. B ("Gibstein Tr.")), at 94:23–95:6. As part of this diligence, the meeting attendees discussed Remo and Islet's proposed merger with BHV. Def. 56.1 Stmt., ¶ 23. Schoninger contends that, at the meeting, he made an offer to invest $1 million in Islet, but admits that Green and Wilkison did not accept the offer and that they did not reach any investment agreement. *Id.*, ¶ 8; Schoninger Tr., at 74:25-75:6 ("On February 11, I will answer, that we did not have an agreement for me to invest $1 million in Islet Sciences based on this, okay. I made an offer. Mr. Green acknowledged it. He did not say yes. We agreed to have further conversations about it."); *see also id.*, at 96:16-24.

### *Schoninger's March 3, 2014 Telephone Call*

On or about February 25, 2014, Schoninger asked Gibstein to arrange a meeting with Green and Wilkison, but that request was not accommodated. Schoninger Decl., ¶ 10. In an attempt to induce Green and Wilkison to accommodate his request, Schoninger told Gibstein that Schoninger would only invest $250,000. *Id.* He also shared with Gibstein his concern that Green might change his mind about the merger. *Id.* Gibstein assured Schoninger that Green would not change his mind, and subsequently confirmed that with Green. *Id.*; ECF 66-12 (Smith Decl., Ex. 12).

On March 3, 2014, Schoninger had a call with Green and Wilkison. Schoninger Decl., ¶ 11. Green assured Schoninger that the merger would happen "100%," and stated that the merger would be announced "late this week or early next week." *Id.*

### *Schoninger's Investment on March 10, 2014*

Between March 3, 2014 and March 10, 2014, Gibstein communicated to Green that Schoninger was considering varying amounts of investment. *Id.*, at ¶¶ 35–36; Schoninger Decl., ¶ 10. On March 3, 2014, Gibstein left a voicemail for Green stating that Schoninger would be investing "either 250,000 or 300,000." ECF 59-3 (Green Decl., Ex. 3 ("Tr. of March 3, 2014 voicemail")), at 8. On March 6, 2014, Gibstein left another voicemail for Green stating that

3

Schoninger was "now doing $500,000." ECF 59-4 (Green Decl., Ex. 4 ("Tr. of March 6, 2014 voicemail")), at 9.

Eventually, on March 10, 2014, Schoninger met with Gibstein to invest $1 million in Islet. Schoninger Decl., ¶ 13; ECF 65 ("Gibstein Decl."), ¶ 8. Prior to making the investment, Schoninger called Green and informed him of the investment. Green thanked Schoninger for his investment and counsel. Schoninger Decl., ¶ 15; Gibstein Decl., ¶ 10. Schoninger and Green then discussed holding an investor conference call following the announcement of the merger. *Id.* Schoninger subsequently purchased 3.2 million Islet shares and 1.6 million Islet warrants, in exchange for $800,000, and signed a subscription agreement with Islet the same day. *Id.*; Def. 56.1 Stmt., ¶ 38; ECF 59-5 ("Subscription Agreement"). Schoninger also purchased $200,000 in Islet stock from Sand Dollar Partners, L.L.C. Schoninger Decl., ¶ 15; Gibstein Decl., ¶ 10; Def. 56.1 Stmt., ¶ 38. There was never any written agreement between Schoninger and the two individual defendants.

### *Instead of Merging with BHV, Islet Licenses from BHV*

On September 30, 2014, Islet and BHV entered into a merger agreement on terms approved by the Islet Board. Avogenx S-4, at 19. The merger, however, was later terminated, and Islet and BHV instead entered into a license agreement. The lawsuit followed.

## LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). Where the non-moving party has the burden of proof, however, the moving party need only show that there is no evidence to support a necessary element of the non-moving party's claim.

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).

## DISCUSSIONS

Plaintiffs' breach of contract claim contends that Defendants orally agreed to merge Islet and BHV in return for Plaintiffs' investment in Islet. Defendants breached the agreement when Defendants caused Islet to license Remo from BHV. Defendants move for summary judgment on the breach of contract claim, asserting that Defendants never formed any agreement with Plaintiffs. The motion is GRANTED.

### I. Existence of Oral Contract Is Difficult to Establish

A breach of contract claim must be supported by evidence demonstrating a meeting of the minds between the parties as to essential contract terms. *Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 554 (2d Cir. 2009); *Allen v. Robinson*, 2011 WL 5022819, at *5 (S.D.N.Y. October 19, 2011). When a plaintiff alleges the existence of an oral agreement, she "faces a heavier burden." *Bloch v. Gerdis*, 2011 WL 6003928, at *3 (S.D.N.Y. Nov. 30, 2011). "To ensure that parties are not trapped into surprise contractual obligations that they never intended, more than agreement on each detail is required, *there must be an overall agreement to enter into the binding contract.*" *Id.* (emphasis added) (quoting *Cleveland Wrecking Co. v. Hercules Constr. Corp.*, 23 F.Supp.2d 287, 293 (E.D.N.Y. September 29, 1998)).

### II. No Oral Contract Was Formed

Plaintiffs allege that Defendants entered into an oral agreement to merge Islet and BHV. The Plaintiffs' theory is that: (1) on February 11, 2014, Schoninger and Defendants agreed to key terms of the agreement, including the terms pursuant to which Defendants would merge Islet and BHV, (2) on March 10, 2014, Schoninger and Defendants entered into an oral agreement, and (3)

this agreement incorporated all the terms previously agreed to, including the key terms agreed to on February 11, 2014. SAC, ¶¶ 19, 30; Opp'n Mem. at 22–23. The Plaintiffs' theory is untenable for three reasons.[2]

*First*, Plaintiffs have not established that Plaintiffs and Defendants entered into an oral agreement on March 10, 2014. Nothing in the March 10 communication between Schoninger and Green suggests "an overall agreement to enter into the binding contract." *Gerdis*, 2011 WL 6003928, at *3. During the March 10 telephone call, Schoninger manifested his intention to invest $1 million in Islet, and Green thanked Schoninger for his "investment and counsel." Schoninger Decl., ¶ 15; Gibstein Decl., ¶ 10. Then Schoninger and Defendants discussed Schoninger's recommendation that Defendants hold an investor conference call following the announcement of the merger. *Id.* Neither Green nor Wilkison indicated that any of the terms of the merger had changed. *Id.* In fact, it is not even clear whether the terms of the merger was discussed at all. Nothing in this conversation objectively manifests the Defendants' intention to enter into an agreement other than the subscription agreement between Plaintiffs and Islet. There was no offer; no acceptance; and no consideration. Defendants could not have somehow accepted Schoninger's February 11, 2014 offer because there was no such offer to accept. Schoninger rescinded his February 11, 2014 offer on March 3, 2014, when he offered, through Gibstein, to invest "either 250,000 or 300,000" dollars instead of the originally-offered one million dollars. Tr. of March 3, 2014 voicemail, at 8.

---

[2] Defendants contend the breach of contract claim in the Second Amended Complaint is based on a purported agreement formed on February 11, 2014, not any agreement formed on March 10, 2014. *See, e.g.*, ECF 72 ("Reply Mem."), at 1; *see also generally* ECF 58 ("Mem."). The Defendants' interpretation is reasonable. *See Schoninger v. Green*, 2016 WL 817474, at *1 ("[O]n February 11, 2014, ... Schoninger agreed to invest $1 million in Islet in exchange for Green's and Wilkinson's agreement to sell Brighthaven to Islet on the terms discussed"). Under this interpretation, it is clear that the Plaintiffs' breach of contract claim must fail because Schoninger testified that no agreement was formed on February 11, 2014. *See* Schoninger Tr., at 74:25-75:6. The Court, however, views the allegations and facts in light most favorable to Plaintiffs and considers Plaintiffs' theory. Even under that new theory, Plaintiffs' breach of contract claim still fails.

6

Schoninger's claimed belief or understanding that he was entering into a separate agreement with Defendants in their individual capacity is "immaterial in view of the well established principle that the controlling intention is that which is discerned from *the parties' objective manifestation of agreement*, not subjective, uncommunicated intentions or beliefs." *Rosoff v. Mountain Laurel Ctr. for the Performing Arts*, 317 F.Supp.2d 493, 499 (S.D.N.Y. 2004) (emphasis added).

***Second***, even if the March 10 communication did form an oral agreement, nothing in the record suggests that Defendants intended to incorporate, into the purported March 10 agreement, the key terms that Defendants allegedly agreed to on February 11, 2014. Plaintiffs contend that the March 10 agreement must have incorporated the previously agreed terms because the March 10 agreement was the fruit of a continued discussion that started on February 11, 2014. Opp'n Mem. at 22–23. Mere allegation of continued discussion is insufficient to establish the agreed terms of the purported contract. "[F]or a contract to be valid, the agreement between the parties must be definite and *explicit* so their intention may be ascertained to a reasonable degree of certainty." *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982) (emphasis added). And Plaintiffs bear the burden to prove that such agreement was formed. *Dreyfuss*, 349 F. App'x at 554.

Here, Plaintiffs have failed to establish that Defendants explicitly agreed to incorporate all previously agreed terms into the purported March 10 agreement. March 10 conversation did not even refer to prior discussions between Schoninger and Defendants, much less the terms allegedly agreed to. Accordingly, Plaintiffs have not met their burden to establish that the purported March 10 agreement incorporated the previously agreed terms, including the terms governing the merger between BHV and Islet.

***Third***, even assuming that the purported March 10 agreement incorporated the previously agreed terms, Plaintiffs have not established that one of the previously agreed terms is a promise to merge Islet and BHV. Plaintiffs contend that Defendants, in effect, promised to merge Islet and BHV because (1) Defendants said the merger would happen "100%" and (2) Defendants had the power to consummate the merger since they were the officers of Islet and the sole owners of BHV.

The Defendants' representation of the expected merger, however, was not a promise to consummate the merger, but rather a mere disclosure of an expected business transaction. The statement that the merger would happen "100%" is an opinion or a business projection; it does not manifest any commitment that is required of a promise. Accordingly, Plaintiffs have not established that one of the terms in the purported March 10 agreement is a promise to merge Islet and BHV.

For these reasons, no reasonable jury could find that Schoninger and Defendants entered into an oral agreement, much less an agreement in which Defendants agreed to merge BHV and Islet. Thus, the Defendant's motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED.

The Clerk of the Court is directed to close all pending motions and terminate this case.

Dated: New York, New York
February 2, 2018

SO ORDERED

PAUL A. CROTTY
United States District Judge